UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
In re:

RAYMOND F. DEJOY, SR. &                         Chapter 7
ELIZABETH V. DEJOY,                             Case No. 11-10268
                            Debtors.
------------------------------------------------------------
APPEARANCES:

Robert H. Cohen, Esq.
*Attorney for Debtors*
P.O. Box 570
Howes Cave, NY 12092-0570

Tracy Hope Davis, Esq.                          Kevin Purcell, Esq.
United States Trustee Region 2
Office of the United States Trustee
74 Chapel Street
Suite 200
Albany, NY 12207

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the court is the motion of the United States Trustee ("UST") to dismiss the

Chapter 7 case of Raymond F. DeJoy and Elizabeth V. DeJoy ("Debtors") for abuse under 11

U.S.C. § 707(b)(1) based upon a presumption of abuse under § 707(b)(2) and the totality of the

circumstances under § 707(b)(3).[1]

## JURISDICTION

The court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(a), (b)(1)

and (b)(2)(A), and 1334.

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

## PROCEDURAL BACKGROUND

The Debtors, who are above-median, filed a voluntary chapter 7 petition on January 31, 2011, together with the required schedules and statements. On March 8, 2011, the UST's office filed a statement that, based upon the documents filed by Debtors, the UST was unable to determine whether the Debtors' case would be presumed to be an abuse of chapter 7 under § 707(b), known as the "means test." Subsequently, on April 6, 2011, the UST filed a statement pursuant to § 704(b)(1)(A) concluding that the Debtors' case was presumed to be an abuse under the means test. On the same date, the UST filed her motion to dismiss. The Debtors opposed the motion. After hearing oral argument, the court continued the matter to allow the parties an opportunity to engage in settlement discussions. When discussions proved futile, the court allowed the UST an opportunity to reply to the Debtors' submissions. On August 17, 2011, the court took the matter under advisement.

## FACTS

The Debtors reside in Schoharie County with their teenage son in a single-family residence that they value at $90,000. The Debtors purchased their home in 1998 from Elizabeth V. DeJoy's father and uncle for $42,000. To facilitate the purchase, Mrs. DeJoy's father and uncle agreed to hold a mortgage for a portion of the purchase price. The mortgage provided for monthly payments of $250. In 2003, the Debtors obtained a home equity loan from a conventional lender in the amount of $56,000. The mortgage held by the Debtors' family was subordinated to the mortgage securing the home equity loan. The Debtors refinanced the home equity loan in 2006 with a mortgage loan of approximately $99,700. To justify the mortgage lender's loan to debt ratio, Mrs. DeJoy's father and uncle were required to execute a satisfaction of mortgage. The Debtors' family members executed the satisfaction, although the amortization

2

of the underlying debt had not been completed.  In both instances, the proceeds from the refinancing of the Debtors' mortgage were used to pay off credit card debt.  The Debtors' conventional mortgage loan requires monthly payments of approximately $827.  In addition, despite the mortgage satisfaction, the Debtors continue to pay Mrs. DeJoy's father and uncle, both of whom are elderly, $250 a month.

In the schedules filed with the petition, the Debtors list secured debt of $101,000 and unsecured debt of approximately $92,614 consisting primarily of credit card debt.  The Debtors' debt owing to Mrs. DeJoy's father and uncle is not scheduled in the petition.

Both Debtors are employed by New York State.  Mr. DeJoy is employed as a highway maintenance worker, and Mrs. DeJoy as a fishery and wildlife technician.  Schedule I, Current Income of Individual Debtors, indicates each Debtor has a payroll deduction for a deferred compensation plan pursuant to section 457(b) of the Internal Revenue Code.  Mr. DeJoy contributes $122.57 per month, and Mrs. DeJoy contributes $274.45 per month.  During 2008 and 2009, the Debtors took out three retirement loans totaling approximately $26,000 to keep up with rising expenses, and to pay off credit card debt and real property taxes.  They are repaying the retirement loans via payroll deductions.  Mr. DeJoy is repaying his loan at the rate of $166.83 per month, with a final payment due in May 2014.  Mrs. DeJoy is paying her loan at the rate of $398.67 per month, with a final payment due in November 2014.  This leaves the Debtors with combined monthly income of $4,544.96.

On Schedule J, Current Expenditures of Individual Debtors, the Debtors list a monthly mortgage payment of $1,150.  This amount includes the amount being paid on the Debtors' first mortgage, as well as the payment to Mrs. DeJoy's father and uncle.  After taking their expenses into account, the Debtors' Schedule J reflects monthly net income of negative $441.04.

3

The Debtors' Form 22A, Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test Form"), tells a different story. The Debtors calculated their current monthly income ("CMI") to be $7,291.20 (Line 12),[2] and their monthly disposable income to be $574.49 (Line 50). When the Debtors' monthly disposable income is multiplied by 60 months, the result is $34,469.40. As additional expenses to be deducted from their CMI, Debtors list $565.06 comprised of their two retirement loan repayments (Line 56).

## ARGUMENTS

There is no dispute that this case is presumptively abusive under the means test. The Debtors argue, however, that they have established special circumstances warranting additional expenses sufficient to rebut the presumption. More specifically, the Debtors contend that the age and condition of their vehicles, the repayment of their retirement loans, the support of elderly family members, and a minimal payment to creditors if they convert to chapter 13 constitute special circumstances. The UST submits that the Debtors have failed to rebut the presumption because they have not provided a detailed explanation of the special circumstances that make additional adjustments to their income under the means test calculation necessary and reasonable.

The Debtors acknowledge that both their vehicles will be paid off by January 2013, but assert the cars are old with high mileage and in need of approximately $3,600 in repairs. The Debtors assert that given the age and condition of their vehicles, and their inability to finance

---

[2] The UST argues the Means Test Form should reflect CMI of $7,421.82 , as reflected on the Debtors' pay advices. According to the Debtors, the CMI period reflects an interval with increased earnings because, traditionally, Mr. DeJoy receives overtime from December to March. The Debtors claim that they appropriately adjusted the CMI period to reflect a more accurate snapshot of the Debtors' income. Using either figure results in a presumption of abuse under the means test so that the court need not resolve this dispute for purposes of this decision.

new vehicles based on their credit history, the costs for maintenance and repair of their vehicles constitutes a special circumstance.

The Debtors argue repayment of their retirement loans also constitutes a special circumstance. The Debtors assert the court should take into account that the funds from their retirement loans and the refinancing of their mortgage were used to pay off existing credit card debt and real estate taxes. The Debtors deem it relevant that as long as they continue to be employed by New York State, repayment of the loans by payroll deduction is mandatory and, if they fail to repay the loans, their retirement benefits will decrease and the defaulted portion of the loan would be treated as a taxable distribution.

The Debtors clarify that their monthly mortgage expense includes the $250 payment being made to their family members. The UST insists this line item should be reduced to approximately $827 to reflect the actual payment amount of the Debtors' first mortgage. The Debtors contend that the financial support they provide to Mrs. DeJoy's father and uncle is an allowable expense under the means test as a reasonable and necessary expense for the care and support of elderly members of their immediate family. They acknowledge that the debt to these family members is no longer secured, but assert that Mrs. DeJoys' father and uncle depend on the $250 monthly payment.

The Debtors also contend that forcing them into a chapter 13 would lead to an absurd result because repayment of their retirement loans would be an allowable expense in a chapter 13 case and not included in their disposable income. Debtors question how Congress could intend to preclude a chapter 7 debtor from rebutting the presumption of abuse by arguing repayment of retirement loans as special circumstances when a chapter 13 debtor may designate retirement loan repayments as an allowable expense.

5

**DISCUSSION**

One area of perceived abuse that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 sought to address was that debtors who could make meaningful payments to their creditors were choosing chapter 7 over chapter 13. As a result, § 707(b)(1) was amended in 2005 to provide, in relevant part, that

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

The "means test" contained in § 707(b)(2) provides a mechanical formula for determining when a court should presume a debtor is abusing the system by filing a chapter 7 petition, rather than a chapter 13. It is presumed that granting relief under chapter 7 would be an abuse of the provisions of that chapter if a debtor's current monthly income, less allowed deductions set forth in § 707(b)(2)(A) and multiplied by 60, is not less than the lesser of—25 percent of the debtor's nonpriority unsecured claims or $7,025, whichever is greater; or $11,725. 11 U.S.C. § 707(b)(2)(A)(i). This calculation is done on Official Form 22A (the "Means Test Form"). It is undisputed that the Debtors' debts are primarily consumer debts and that the presumption of abuse is triggered based upon the Debtors' monthly disposable income.[3] If the calculation results in a presumption of abuse, as in this case, a debtor may only rebut the presumption "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional

---

[3] The Debtors' CMI less certain deductions multiplied by 60 is $34,469.40 ($574.49 x 60). This number is not less than the lesser of $23,160.25 (25 percent of the Debtors' total nonpriority unsecured debts of $92,614) or $7,025, whichever is greater; or $11,725. Thus, applying the formula to the numbers the Debtors supplied on the Means Test Form triggers a presumption of abuse.

expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

The burden is on the debtor to overcome the presumption by a preponderance of the evidence. *See In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006). To establish special circumstances, a debtor is required to itemize and provide documentation for each additional expense, along with a detailed explanation of the special circumstances that make such expense necessary and reasonable. 11 U.S.C. § 707(b)(2)(B)(ii). The debtor must also attest under oath to the accuracy of any information provided to demonstrate that additional expenses are required. 11 U.S.C. § 707(b)(2)(B)(iii). "What constitutes a 'special circumstance' is by no means well settled." *In re Cotto*, 425 B.R. 72, 77 (Bankr. E.D.N.Y. 2010) (citing *In re Cribbs*, 387 B.R. 324, 329 (Bankr. S.D. Ga. 2008)). While the two enumerated examples of special circumstances referenced in the statute "are not intended to be an exhaustive list," *In re Cotto*, 425 B.R. at 77, in order for the court to find special circumstances, a debtor must show that his or her situation rises to the same level of extremity as a serious medical condition or active duty in the armed forces. The two examples are similar in that "they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." *In re Smith*, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008); *In re Castle*, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006) ("Under the statutory interpretation canon of *ejusdem generis*, a court is to limit the sphere of permissible 'special circumstances' to one's having such similar traits and characteristics."). Not every conceivable unfortunate or unfair circumstance will rebut the presumption of abuse, "only those circumstances that cause higher household expenses . . . 'for which there is no reasonable alternative,' i.e., they are unforeseeable or beyond the control of the

debtor." *In re Naut*, No. 07-20280REF, 2008 WL 191297, at *10 (Bankr. E.D. Pa. Jan. 22, 2008) (quoting *In re Lightsey*, 374 B.R. 377, 381–82 (Bankr. S.D. Ga. 2007); s*ee also In re Graham*, 363 B.R. 844 (Bankr. S.D. Ohio 2007) (additional costs of maintaining separate household to hold gainful employment and long commuting distances found to be special circumstance to rebut presumption of abuse); *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Colo. 2007) (additional expenses to live near an appropriate school for a special needs child was special circumstance to rebut presumption of abuse).

The Debtors claim that required repairs and anticipated maintenance for their older model vehicles demonstrate special circumstances. The court disagrees. Aging vehicles and car repairs are an ordinary occurrence for car owners and, consequently, cannot constitute special circumstances warranting an additional expense to the detriment of creditors. *Cf. In re Palmer*, 419 B.R. 162, 167–68 (Bankr. N.D.N.Y. 2009) (holding that vehicle needing repairs was not unanticipated, material change in circumstances, of kind required to modify confirmed chapter 13 plan and surrender vehicle).

While supporting aging family members may constitute special circumstances contemplated by § 707(b)(2)(B)(i) or an allowable expense under the means test, the Debtors have not satisfied their burden in this case. Initially, the Debtors attempted to treat the debt owing to Mrs. DeJoy's father and uncle as a secured mortgage debt on Schedule I and on Line 20B of the Means Test Form, however, the mortgage satisfaction that was executed has rendered the debt unsecured. In response to the Trustee's motion, the Debtors argue that the loan to Mrs. DeJoy's father and uncle was not satisfied, and they have come to depend on the monthly payments. It is unclear if the Debtors intend to support their family members indefinitely, or

until the original loan is amortized in 2014. The Debtors provide little more than perfunctory declarations in their affidavit that they provide support for their elderly relatives.  Neither the Means Test nor Schedule J contains an expense for the support of elderly family members.  The Debtors concede that "[a] detailed budget for either party has not been compiled and debtors rely on the Court's judgment that the contributions are minimal in nature and, at least in the case of the father, necessary for his support." (Am. Reply to Mot., ECF No. 21, at 3.)  Without budgets showing the income and expenses for Mrs. DeJoy's father and uncle, the court cannot effectively determine whether the Debtors should be allowed to continue to pay their family members an otherwise dischargeable debt at the expense of creditors.

    The Debtors argue that repayment of their retirement loans also constitutes special circumstances sufficient to rebut the presumption of abuse under § 707(b)(2)(A).  The majority of courts that have addressed whether the repayment of a retirement loan is a special circumstance sufficient to rebut the presumption of abuse have held that it is not. *See In re Egebjerg*, 574 F.3d 1045, 1053 (9th Cir. 2009); *In re Smith*, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008); *In re Mowris*, 384 B.R. 235, 240 (Bankr. W.D. Mo. 2008); *In re Turner*, 376 B.R. 370, 378–79 (Bankr. D.N.H. 2007); *but see In re Cribbs*, 387 B.R. 324, 330–31 (Bankr. S.D. Ga. 2008) (while voluntary, loan from retirement account to fund repayment plan to creditors developed by a debt counseling service found to be special circumstances).  The court agrees with the majority that "[r]etirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition of this term." *Eisen v. Thompson*, 370 B.R.

762, 773 (N.D. Ohio 2007).  While "an obligation to repay a loan is not a 'special circumstance,' . . . the circumstances that led to taking that loan may be 'special' under § 707(b)(2)(B)(i)." *Id.*

Perhaps, if the loan proceeds were applied to something other than general financial problems, those circumstances might prove special. *See In re Egebjerg*, 574 F.3d 1045, 1053 (9th Cir. 2009).  The record in this case, however, does not demonstrate that the credit cards that were paid off with monies from the Debtors' retirement funds were used to purchase anything other than ordinary household and personal goods.  It seems the Debtors borrowed from their retirement funds because of a general inability to keep up with their obligations to creditors, a situation that plagues most debtors.  The Debtors indicate the circumstances leading up to their financial difficulties included increased costs for gas, food, credit card interest and fees, home maintenance, expenses associated with travel to visit ailing family members, and the purchase of two used vehicles.  Based upon the record, the court cannot make a finding that the circumstances that lead to the Debtors' borrowing from their retirement funds rise to the level of special circumstances contemplated by § 707(b)(2)(B).

The Debtors contend that the court should also take into account that if they file a chapter 13 case, their retirement loan repayments would not be included in their disposable income and, thus, not included in their plan payments.  This exclusion of retirement loan payments from disposable income in chapter 13 cases is statutory.  Section 1322(f) provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."  11 U.S.C. § 1322(f). Because Congress did not incorporate any provisions from chapter 13 into the means test, we must assume that Congress intentionally gave a chapter 13 debtor the ability to exclude

the repayment of a retirement loan from disposable income, but did not provide for the same treatment under the means test for a chapter 7 debtor. *In re Mowris*, 384 B.R. 235, 240 (Bankr. W.D. Mo. 2008). This divergent treatment also takes into account that a chapter 7 proceeding is a relatively short process, while a chapter 13 case typically extends three to five years.

> It is certainly possible that the debtor may pay the balance of a loan taken from her retirement account during that period, and the trustee would then have the ability to redirect the newly available funds to the creditors. Thus, the provisions governing Chapter 13 protect a debtor's ability to repay a loan from her retirement account while at the same time requiring the debtor to devote the amount of that payment to her creditors if she pays the loan during the Chapter 13 commitment period.

*In re Mordis*, Ch. 7 Case No. 06-42590-293, 2007 WL 2962903, at *5 (Bankr. E.D. Mo. Oct. 9, 2007).

Further, the means test is a bright line test. *In re Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006). It was meant to limit judicial discretion and create a more objective standard for establishing a presumption of abuse. As a result, "'[t]he mathematical formula incorporated [in the means test] . . . bears no obvious relationship to the amount of money that will actually be available from the debtor for payments to unsecured creditors if [a chapter 13] plan is confirmed.'" *Id.*(quoting *In re Walker*, Ch. 7 Case No. 05-15010-WD, 2006 WL 1314125, (Bankr. N.D. Ga. May 1, 2006).

## CONCLUSION

Based upon the foregoing, the court concludes that the presumption of abuse arises in this case, and that the Debtors have failed to rebut the presumption. Accordingly, the UST's motion is granted, unless the Debtors elect to convert their case to chapter 13. The Debtors shall have twenty-one days after entry of this order to file a motion for an order converting their case to

chapter 13.  If the motion is not timely filed, the UST shall submit an order dismissing the case.

Because the facts compel dismissal under § 707(b)(2), the court does not consider the UST's alternative ground for dismissal under § 707(b)(3).

It is so ORDERED.

Dated: November 18, 2011                                          /s/ Robert E. Littlefield, Jr.
                                                                                    _____
                                                                                    Hon. Robert E. Littlefield, Jr.
                                                                                    Chief United States Bankruptcy Judge